## JIM ANDERSON v. THE STATE.

1. THEFT — EVIDENCE.— When the possession of recently stolen property is relied on as inculpatory of the accused, his explanation thereof is admissible in his behalf though given after he had parted with the possession, provided it was given on the first occasion for any explanation by him. It is not material that the first occasion did not present itself until three or four weeks after he had parted with the possession.

2. SAME — CHARGE OF THE COURT.— It was in proof that the defendant was in possession of the stolen cattle soon after they were missed by the owner, and the defense adduced evidence of a purchase of them by the defendant. Counsel for the defense asked an instruction to the effect that the defendant's possession was not an inculpatory fact if he purchased the cattle in good faith and believing his vendor had the right to sell them. *Held* that, whether the requested instruction was correctly framed or not, it sufficed to devolve upon the court the duty of giving to the jury the law which controlled the issue raised by the evidence.

APPEAL from the District Court of Freestone. Tried below before the Hon. L. D. BRADLEY.

Theft of nineteen head of cattle, the property of Jesse Awalt, was the offense charged in the indictment. The jury found the appellant guilty, and assessed a term of five years in the penitentiary as his punishment.

Jesse Awalt, the alleged owner of the stolen cattle, was the first witness for the State. He testified that he was and for thirty years had been a resident of Freestone county, and was the owner of a small stock of cattle, twenty-five or thirty in number, which he had himself raised. They were gentle, and ranged within three miles of home. Witness had no brand, but had an unrecorded mark when he missed nineteen head of his cattle in August, 1881, about the date alleged in the indictment. He searched diligently for them, but had never been able to find them. They bore the witness's ear-marks and were mostly yellow. One was a red cow with dark stripes, and two of the others might be called spotted.

There were five cows, nine two-year-olds and five year-lings. The last time witness saw them was on the 11th or 12th of August, 1881, at his house. A steer belonging to W. Speed habitually ranged with witness's cattle, but he had not seen it since his own were missed. Speed and witness hunted together for the missing animals, but were unable to find any of them, nor ascertain anything about them except that a drove of cattle had been driven from Freestone county to Corsicana, in Navarro county, about the time these cattle were missing. Witness went to Corsicana and saw F. L. Smithey, the cattle-inspector, and an examination of his books showed that Jim Anderson, the defendant, on the 13th of August, 1881, shipped from Corsicana a lot of cattle, and among them were nineteen in the mark of witness. No person had the consent of witness to take or drive off any of his cattle. He valued those taken at an average of ten dollars per head.

On his cross-examination the witness stated that he never saw the defendant in possession of his cattle, and could not of his own knowledge say that they were stolen by the defendant, nor that those he shipped were witness's. Some time after the cattle were missed, and after witness returned home from Corsicana with the information he got there, he sent for the defendant, with whom he desired to have a talk about the cattle. At this stage of the testimony the counsel for the defendant proposed to elicit from the witness the conversation at his house, with reference to the cattle, which occurred between him and the defendant on the occasion referred to by the witness. Counsel for the State objected, and the court sustained the objection; to which ruling the defense reserved exceptions on the ground that the acts and statements of the defendant when first informed that he was accused or suspected of stealing the cattle were legitimate evidence in his behalf.

F. L. Smithey, cattle-inspector at Corsicana, for the State, testified that on August 13, 1881, the defendant, accompanied by a young man whom witness did not know, called upon witness to inspect a lot of cattle which the defendant desired to ship. There were twenty-one head of cattle in the lot; nineteen of them were un-branded, but marked with an under-half-crop in the right ear and a swallow-fork in the left,— the same mark previously given in proof by the witness Awalt. Defendant had a bill of sale for the animals, and witness copied the marks and brands from it into his inspection-book, and then examined the animals and found that he had their marks and brands correctly entered. Defendant shipped the cattle that evening.

On cross-examination the witness stated that it was two weeks after defendant shipped them when the witness Awalt came to see witness, and examined the inspection-book. Witness had known the defendant since the latter was a boy, and knew his general character in Navarro county for honesty and fair dealing. It was as good as that of any cattle-man in the country. Witness had never known of any charge against the defendant before this one. For three years the defendant has been engaged in buying cattle for shipment from Corsicana, where the witness inspected them. Defendant had always been particular in his transactions.

Re-examined by the State, the witness testified that the defendant lived about twelve miles from Corsicana, and witness did not know his reputation among his immediate neighbors.

W. Speed, for the State, corroborated the statements of Awalt respecting the steer which ran with the latter's cattle.

F. M. Harris, for the State, testified that he lived in the county of Freestone, about two miles from Awalt's, and three-quarters of a mile from Caney creek. About

the 10th or 11th of August, 1881, the defendant, accompanied by Pink Harris and Jeff. Dunn, came to witness's house, and inquired if witness knew any one who had cattle to sell. Witness said he did not, and they rode off towards Caney creek, but soon returned and got dinner at witness's. Defendant said, " Well, I don't believe you want to sell any cattle; " and witness replied that he did not. After getting their dinner the defendant and his companions rode off towards Caney creek, and the witness saw no more of them. If they had returned by his house, he could have seen them.

The first evidence introduced by the defense was a bill of sale purporting to have been made by Sam Pryor, in Freestone county, August 12, 1881, and to convey to the defendant twenty-two head of cattle, of which nineteen were described as unbranded, and with the ear-marks delineated as described by the State's witnesses, Awalt and Smithey. The bill of sale expressed a cash consideration of $176, and bore the name of Jeff. Dunn as a witness. Appended to it was the affidavit of Jeff. Dunn before the county clerk of Freestone county, dated February 21, 1882, which was the day of the trial of this case in the court below. Dunn swore in the affidavit that he saw Sam Pryor subscribe the bill of sale, and that he signed it as a witness at the request of Sam Pryor.

Peter Dunn, for the defense, testified that in the summer of 1881 the defendant, in company with Jeff. Dunn and Pink Harris, came to witness's house late in the afternoon. They brought with them a bunch of cattle, between fifteen and twenty-five head, penned them at witness's, and stayed all night. The defendant said he had bought them in the brush across Tehuacana creek. Two or three days afterwards a man who called himself Sam Pryor came to witness's, and said he was looking for the defendant and had some more cattle to sell him. He asked witness where the defendant lived, and when

witness gave him directions he started off that way. Jeff. Dunn was in the defendant's employ; he had no regular home.

Bill Harris, for the defense, stated that in August, 1881, he saw the defendant with twenty or thirty head of cattle near Tehuacana creek. Jeff. Dunn and Pink Harris were with him, and also a negro and a man who called himself Sam Pryor. Witness saw the defendant pay Sam Pryor some money, and saw the latter sign a bill of sale for the cattle, and Jeff. Dunn sign it as a witness. On cross-examination the witness said that Sam Pryor dismounted from horse-back to sign the bill of sale, and he and defendant called Jeff. Dunn to come and sign it as a witness. Sam Pryor was a stranger to witness; he was a dark-haired man, heavy set and well dressed. Witness left defendant and his party where he found them.

W. J. Harral, for the defense, corroborated the statements of Bill Harris, the next preceding witness. He saw the defendant write and Sam Pryor sign the bill of sale, and also Jeff. Dunn subscribe it as a witness. He saw the defendant pay to Pryor about $176 in money, and saw Pryor roll it up and put it in his pocket. On his cross-examination the witness said he had never seen Sam Pryor before that occasion. Pryor had dark hair and eyes, was of medium size, and wore common clothes, like those usually worn by stockmen when they are driving cattle. Witness had the bill of sale in his hands and examined it closely on the occasion in question, and identified as the same the bill of sale introduced by the defense. He could not give the marks of the cattle, but knew that nineteen of them were unbranded. He left defendant and his party where he found them.

Charles McConico, for the defense, stated that he had known the defendant since the latter was a boy, and knew defendant's reputation was good in Navarro county. On

cross-examination the witness stated that he had recently moved about thirty miles from the defendant, and did not know the present standing of the latter among his neighbors.

The State in rebuttal introduced Walter Bonner, who testified that in August, 1881, and about the time Awalt's cattle were reported stolen, he met and passed a lot of cattle, from fifteen to twenty-five head, near the locality spoken of by the witnesses for the defense; and at the same time he also met and passed Jeff. Dunn and a man whom witness did not know. They were on horse-back, and when witness first saw them they seemed to be driving the cattle; but when witness got close to them they went along as though they had nothing to do with the cattle. The man with Jeff. Dunn somewhat resembled the defendant, but witness could not say he was the defendant. The man seemed darker than defendant looks, but was about the same size. A little further on the witness saw Pink Harris and W. Harral.

*W. Croft* and *Farrar & Kirven*, for the appellant.

*H. Chilton*, Assistant Attorney General, for the State.

HURT, J. The appellant was convicted of the theft of cattle, the property of Jesse Awalt. For a conviction the State relied upon the fact that, some day or two after the theft, the defendant shipped the cattle at Corsicana, and that he was seen in the neighborhood from which the cattle were taken, about the time the cattle were stolen, inquiring of the witness if he had or knew of any cattle for sale.

The first ground relied on shows recent possession of the stolen property in the defendant. This possession, however, had not been questioned. He had not been called on circumstantially, directly, or in any manner to account for or explain his possession, until some time after he had parted with the possession by shipping the cattle.

If, while in possession, he had been charged with the theft, or in any manner been called on to account for or explain his possession, certainly his right to do so would not be questioned.    Does the fact that he had parted with the possession when called upon to explain or to account for it, by the owner, deprive him of his right of explanation, never having had the opportunity of so doing before.    The explanation being made (if reasonable) while in possession, and he being *called upon to explain*, compels the State to prove his account or explanation untrue, or to rely upon other facts for a conviction.    This is the effect of a reasonable account of the recent possession of stolen property, if the account is given while in possession.

How does the fact that defendant had parted with the possession affect this principle if *when first* called upon he explains?    An explanation, though accompanied with possession, unless he were called upon for an account, is not admissible.    If, therefore, he explains when his possession is first challenged, or when an account is demanded by the circumstances or directly (the State relying upon the possession), we can see no good reason why these explanations should not be received.

This is evidently the view of this question taken in *Hampton* v. *State*, 5 Texas Ct. App. 463.    Judge Ector states the rule to be this: "The rule of evidence which allows such declarations to be given in evidence by the accused is limited to the time and to declarations made by him when he is first caught in possession of the stolen property,— when he first ascertains, or it is made apparent to him, that his right to the ownership of said property is questioned by some one else.    The declarations of the defendant when first caught or found in the possession of the stolen property are admissible in evidence, either for or against him."

The defendant proposed to prove his explanations, made to the owner, and, so far as we are informed by the statement of facts, this was the first time and opportunity at

which defendant had ever had the (legal) right to account for his possession; he never having been called upon in any manner to explain before. We think the court erred in rejecting this proof. The evidence tends to show that defendant purchased the cattle of one Prior, but, as Prior was a stranger, never having been seen before and but once since, which was a few days after the sale and in the immediate vicinity thereof, that he had stolen the cattle and sold them to the defendant.

Bearing directly upon this phase of the case, defendant, by his counsel, requested the court to give this charge: "If you believe from the evidence that the bill of sale to the cattle described in the indictment was made and executed by one claiming to have the right to sell and dispose of said cattle, possession by the defendant of said cattle under the bill of sale made to him, and claiming the right and authority as before explained, to sell said cattle, would not be illegal, although said cattle may have been stolen by the person selling the same to defendant, unless you believe from the evidence that the defendant knew at the time of the sale that the person selling had no right or authority to sell."

The object of this charge was to meet this phase of the case:—that, if the cattle were stolen by Prior and sold and billed to defendant, and defendant knew nothing of the theft, his possession of the cattle would not be inculpatory evidence. Whether the charge as worded was precisely correct or not, it nevertheless was amply sufficient to call attention to this state of case indicated by the evidence, and a charge should have been given thereon.

We are of the opinion that the court erred in refusing this charge, or, if it was not properly drawn, the court erred in not submitting to the jury a proper charge on this branch of the case.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*